OPINION
In this action for personal injury resulting from a trip and fall, plaintiff-appellant Mildred A. Rosemann appeals from the trial court opinion and order that granted the separate motions for summary judgment filed by defendants-appellees the City of Berea ("Berea") and Baldwin Wallace College ("BW").
Appellant argues summary judgment for appellees was improper on the basis the evidence demonstrated issues of fact remained regarding appellees' awareness of either a nuisance or a dangerous condition existing on the sidewalk where she fell. This court has examined the record and finds the trial court's order was appropriate; therefore, it is affirmed.
Appellant's injuries resulted from an incident that occurred on the afternoon of September 25, 1996. At that time, appellant was walking on a sidewalk on the south side of East Bagley Road in Berea. She was traveling west toward Front Street, having just crossed Seminary Street. Approximately thirty feet ahead of her in the sidewalk, appellant "saw a round, rusted, brown object. Which [she] perceived to be either a gas cap or water cap."[1]
The object "appeared to be flush with the sidewalk," which was generally in good condition; appellant apparently did not give it further consideration since she "proceeded."
However, when she reached the area where the object was located, appellant "suddenly was caught as a fox in a trap." She "pitched forward," falling on her right side and fracturing her right arm. A passing motorist observed appellant's predicament and used a cellular telephone to summon emergency assistance.
Upon the arrival of the ambulance, the comments made by an emergency medical technician led appellant to believe she had fallen because the "water cap"[2] in the sidewalk was either "loose" or in an inverted position. Appellant subsequently reported her belief to two cousins who visited her at the hospital to which she had been transported. Appellant's cousins thereafter proceeded to the area of the sidewalk she had described and took photographs of the water cap. One of appellant's cousins, George R. Simon, characterized the water cap as "loose" and "easy to turn" from an "inverted position [to] an upright position."
Appellant ultimately instituted the instant action, originally naming as a defendant only Berea. After discovering Berea had a city ordinance requiring property owners to maintain adjacent sidewalks,[3] appellant amended her complaint to include BW as a defendant. Appellant alleged as to both Berea and BW that they were negligent in permitting a "faulty or obstructive" condition to exist and that the condition constituted a nuisance pursuant to R.C. 723.01.[4]
Following some discovery in the action, Berea filed a motion for summary judgment. Therein, Berea presented three arguments: (1) it neither had created the water cap's defective condition nor had either actual or constructive notice of the water cap's defective condition — therefore, appellant could not prove it had breached any duty of care toward her; (2) the defective condition was insubstantial as a matter of law; and (3) Berea had delegated maintenance of the sidewalks to adjacent property owners, thus, it owed no duty of care toward appellant.[5]
Berea supported its motion with copies of the following: (1) portions of appellant's deposition testimony; (2) the deposition transcripts of both Paul McCumbers, Berea's Director of Public Safety and Public Services, and Daniel McGannon, Berea's Water Treatment System Superintendent; and (3) Berea Codified Ordinance 921.06.
BW also filed a motion for summary judgment on appellant's claims. BW initially argued Berea Codified Ordinance 921.06 did not create for appellant a separate cause of action against BW. BW further argued it had no notice of any defective condition existing on the sidewalk; therefore, appellant could not support her cause of action in negligence.
BW supported its motion with excerpts from Berea's motion for summary judgment, portions of appellant's deposition testimony, and the affidavit of Thomas Reeder, its Director of Buildings and Grounds. Reeder stated in pertinent part as follows:
 4. No employee or agent of Baldwin Wallace College performed any work at the premises in question that would have involved the water cap on the public sidewalk. In the time between the time the property was acquired and the time of plaintiff's accident, only cosmetic changes [to the building on the property] (i.e., painting, carpeting, papering, etc.) were performed.
 5. Baldwin Wallace College: (a) did not place the water cap in an inverted position; (b) does not know who may have; (c) had no knowledge of this until it was made a party to this legal action; and (d) can conceive of no reason why a water cap would be placed upside down.
Subsequently, appellant filed a brief in opposition to appellees' motions. Appellant argued the evidence was sufficient to demonstrate issues of fact remained regarding whether appellees had either actual or constructive notice of the "loose-fitting" defective condition of the water cap and whether they failed to take measures to remedy the problem.
Appellant supported her brief with several documents. The first was the affidavit of her cousin George T. Simon. Simon's affidavit was accompanied by photographs of the water cap over which appellant claimed to have fallen; Simon stated the photographs had been taken on the day of the incident. The water cap was depicted placed in various positions, one of which caused its underlying prongs to protrude above the sidewalk's surface. Simon failed to state how the cap was positioned upon his arrival at the scene of the accident.
Appellant also provided the affidavit of her safety "expert, " William L. Bunner. Bunner opined that a review of the deposition transcripts filed in the case revealed that: (1) Berea was "aware" of the potential hazard posed by "unauthorized" tampering with water valve box caps; but (2) neither Berea nor BW took "reasonable steps to discover and correct conditions" that constituted a nuisance on the sidewalks. Bunner did not specifically state whether appellant's fall either was caused by the water cap's "removal" or was caused because the water cap was "improperly positioned."
Finally, appellant provided more lengthy portions of the deposition transcripts upon which appellees had relied to support their motions.
Thereafter, the trial court issued its opinion and order granting appellees' motions for summary judgment. The trial court stated as to Berea that the evidence failed to demonstrate either that Berea had a duty to circumvent the "possibility" that a hazard could be created by tampering with the water cap or that Berea had any notice of the condition of the water cap.
As to BW, the trial court stated simply that appellant had produced no evidence BW had notice of the water cap's condition.
Appellant filed a timely appeal of the foregoing order. She presents a single assignment of error for review, which is set forth as follows:
 THE TRIAL COURT ERRED IN GRANTING THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, AS THERE ARE GENUINE ISSUES AS TO MATERIAL FACTS AND NO PARTY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.
Appellant argues the record contains evidence that demonstrates appellees had either actual or constructive notice of the existence of a "nuisance" on the sidewalk; therefore, summary judgment was not appropriate. This court disagrees.
 Civ.R. 56 (C) provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, * * *.
Davis v. Loopco Industries, Inc. (1993), 66 Ohio St.3d 64.
Summary judgment, therefore, is a procedural device utilized in order to terminate litigation and to avoid a formal trial where there is nothing to try. Norris v. Ohio Standard Oil Co. (1982),70 Ohio St.2d 1. Accordingly, a properly-supported motion for summary judgment forces the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. Dresher v. Burt (1996), 75 Ohio St.3d 280; Wing v.Anchor Media, Ltd. of Texas (1991), 59 Ohio St.3d 108.
To establish her claims against appellees, appellant had to show three essential elements: (1) a duty or obligation on the part of appellees to protect her from injury; (2) a breach of that duty; and (3) an injury proximately resulting from that breach. Wellman v. East Ohio Gas Co. (1953), 160 Ohio St. 103, paragraph three of the syllabus; Jeffers v. Olexo (1989), 43 Ohio St.3d 140,142; Keister v. Park Centre Lanes (1981), 3 Ohio App.3d 19.
A sidewalk on a public street is presumed to be under the control of the municipality. Eichorn v. Lustig's, Inc. (1954),161 Ohio St. 11, 13. R.C. 723.01 imposes a duty on a municipal corporation to keep the sidewalks "free from nuisance." Ruwe v.Bd. of Springfield Twp. Trustees (1987), 29 Ohio St.3d 59. A city's liability for failure to perform such a duty, however, "cannot arise except upon proof either that its agents or officers actually created the faulty condition from which injury resulted or that it had notice thereof, actual or constructive."Id.
Although appellant contends that if the evidence is construed in her favor, it demonstrates Berea had notice of the defective water cap, appellant's contention is baseless. McCumbers stated in his deposition testimony that the "design of this type of water valve and cap requires no routine inspection" because the "potential of a hazard like this [Viz., being placed in an inverted position] is extremely remote." McCumbers further stated unequivocally that no citizen complaints ever had been received regarding the water cap over which appellant had fallen.
McCumbers' testimony was supported by that of McGannon. McGannon stated a city water service technician would have passed by the water cap "once every three months" and would have both corrected and reported any problems that he or she observed. McGannon also stated it was "hard to get the caps out" and that a problem such as an inverted cap would "very seldom" occur. Finally, McGannon stated that, based upon his inspection of the records, Berea had received no notice of any problem with the water cap that appellant claimed caused her fall.
The affidavit of appellant's "expert" was insufficient to overcome Berea's evidence since he was not a competent witness in the matter. Fisher v. Lewis (1988), 57 Ohio App.3d 116.
First, a review of Bunner's credentials attached to his affidavit reveals his educational and professional certifications did not qualify him as an expert on the subject before the trial court. Bunner's training was in the area of construction and "rigging" safety rather than water and sewer safety. Hudson v.Arias (1995) 106 Ohio App.3d 724; Vinci v. Ceraolo (1992),79 Ohio App.3d 640; Stowe v. East Toledo Boys and Girls Club (Apr. 12, 1991), Lucas App. No. L-90-099, unreported; Cf., Weaver v.Standard Oil Co. (1989), 61 Ohio App.3d 139.
Second, it is apparent that Bunner's opinion was not based upon any personal knowledge: he could not state which "defective condition" caused appellant's fall, viz., the water cap's removal or the water cap's placement in an improper position. Robinson v.J. C. Penney Co. (May 20, 1993), Cuyahoga App. Nos. 62389, 63062, unreported; cf., Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607; Weaver v. Standard Oil Co. (1989), 61 Ohio App.3d 139;Lawson v. Song (Sept. 23, 1997), Scioto App. No. 97 CA 2480, unreported.
R.C. 723.01 "does not make a municipality an insurer of the safety of persons in the use of its sidewalks * * *." Shainker v.City of Cleveland (Mar. 2, 1989), Cuyahoga App. No. 55083, unreported, at 4. Since the evidence demonstrated Berea had no notice, either actual or constructive, of any problem with the water cap until after appellant's fall, the trial court properly granted summary judgment to it on appellant's claims. Ruwe v. Bd.of Springfield Twp. Trustees, supra; Edmonds v. CorporateServices Management Estates (Nov. 2, 1995), Cuyahoga App. No. 68016, unreported; Miller v. Cleveland (Sep. 12, 1991), Cuyahoga App. No. 59258, unreported; cf., Hamila v. Cleveland (1993),91 Ohio App.3d 618.
Similarly, nothing in the record supports appellant's assertion that issues of fact remain as to BW's liability with regard to the water cap.
 It is the generally accepted principle in Ohio that "an owner of property abutting a public sidewalk is not, generally, liable for injuries sustained by a pedestrian thereon." Crowe v. Hoffman (1983), 13 Ohio App.3d 254, 255, 468 N.E.2d 1120 citing Eichorn v. Lustig's, Inc. (1954), 161 Ohio St. 11, 117 N.E.2d 436. To this general rule, there are three exceptions. First, when a pedestrian sustains injuries under such circumstances, the abutting property owner will be liable if a statute or ordinance imposes upon him a specific duty to keep the sidewalk adjoining his property in good repair. Hoffman, supra citing Dennison v. Buckeye Parking Corp. (1953) 94 Ohio App. 379, 115 N.E.2d 187; see also Gall, et al. v. Systems Parking, Inc. (October 27, 1994), Cuyahoga App. No. 66159, unreported. Second, the property owner will be liable if by affirmative acts he created or negligently maintained the defective or dangerous condition causing the injury. Eichorn, supra. Third, the property owner will incur liability if he negligently permitted the defective or dangerous condition to exist for some private use or benefit. Eichorn, supra.
 Where a municipality enacts an ordinance imposing liability on a property owner for damages sustained by third parties for an owner's failure to comply with the ordinance, and where that municipality fails to provide the owner with notice of its violation,
the ordinance may not be relied upon to impose liability on the owner. Hughes v. Kozak (February 22, 1996), Cuyahoga App. No. 69007, unreported, citing Eisenhuth v. Moneyhon (1954), 161 Ohio St. 367, 119 N.E.2d 440. Furthermore, "[t]o interpret the ordinance to require that the City specifically authorizes a third party suit or civil liability is misreading the ordinance." Walker v. City of Parma
(May 30, 1991), Cuyahoga App No. 60540, unreported.
Kingston v. Austin Development Co. (Feb. 5, 1998), Cuyahoga App. No. 72034, unreported. (Emphasis in original; underscoring added.) See, also, Elkins v. City of Lake wood (Nov. 25, 1998), Cuyahoga App. No. 73778, unreported; McCutcheon v. Kidman (Aug. 18, 1994), Cuyahoga App. No. 66117, unreported.
There is nothing in the record to suggest any of the exceptions to the general rule exist in this case. In his affidavit, Reeder stated BW neither created nor was notified of any problem involving the water cap in the sidewalk. Under these circumstances, summary judgment for BW on appellant's claims also was appropriate. Tackett v. Ball (Sep. 23, 1998), Jackson App. No. 97CA822, unreported; McCutcheon v. Kidman, supra; Edmonds v.Corporate Service Management Estates, supra; cf., Hughes v. Kozak
(Feb. 22, 1996), Cuyahoga App. No. 69007, unreported.
Since the trial court did not err in granting appellees' motions for summary judgment, appellant's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and
 PATRICIA A BLACKMON, J. CONCUR
 ______________________ PRESIDING JUDGE KENNETH A. ROCCO
[1] Quotes are taken from evidentiary materials filed in the trial court.
[2] Daniel McGannon, Berea's Water Treatment System Superintendent, testified in his deposition that the object is properly referred to as a "water valve box cover." The parties generally refer to it, however, simply as a "water cap."
[3] Berea Codified Ordinance 921.06 states:
 (a) No owner or occupant of abutting lands shall fail to keep the sidewalks, curbs or gutters in repair and free from snow, ice or any nuisance. (ORC 723.011).
 (b) Whoever violates this section is guilty of a minor misdemeanor.
[4] R.C. 723.01 states:
 § 723.01 Legislative authority to have care, supervision, and control of streets.
 Municipal corporations shall have special power to regulate the use of the streets. Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance.
[5] Berea did not argue it was immune from appellant's claims pursuant to R.C. 2744.01 et seq.; therefore, since this issue was not raised in the trial court, this court need not address it.Liebson v. Ohio Dept. of Mental Retardation Dev. Disabilities
(1992), 84 Ohio App.3d 751.