[Cite as *Davis v. Stoykoff*, 2025-Ohio-2710.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Samantha Davis, et al. | Court of Appeals No. L-24-1281 |
| Appellants | Trial Court No. CI0202302185 |
| v. | |
| Naomi Stoykoff, et al. | **DECISION AND JUDGMENT** |
| Appellee | Decided: August 1, 2025 |

* * * * *

Todd O. Rosenberg, for appellants

Samuel N. Dodoo, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from a judgment by the Lucas County Court of Common Pleas which granted the motion for summary judgment by the defendant-appellee, Naomi Stoykoff. For the reasons set forth below, this court reverses the trial court's judgment.

I. Background

{¶ 2} On April 13, 2023, plaintiffs-appellants Samantha Davis and Brent Davis filed a complaint with jury demand against appellee[1] setting forth claims of negligence

---

[1] The complaint names as additional defendants "John Does Nos. 1-10" who "were the owners, landlords, tenants and/or managers of" appellee's residence, located in Toledo,

and/or recklessness for Samantha Davis, a business invitee, and a claim of loss of consortium for Brent Davis, Samantha's husband. Appellee is an elderly neighbor to, and friend of, Brent Davis' mother. Appellee's daughter arranged for appellants to clean appellee's home once per month for $60 each visit where each visit lasted about one hour. The arrangement began in October or November 2020 and lasted until the accident on April 15, 2021. By the date of the accident, Samantha Davis had cleaned appellee's residence about five times. Appellants exclusively entered and exited appellee's residence from the side door, and it is unclear how many times appellants entered and exited through the side door on each visit.

{¶ 3} Appellants alleged in their complaint that on April 15, 2021, appellants were "visiting Defendants' residence to assist with cleaning" when Samantha Davis exited from the side door onto two concrete steps where "One step was too high, violating the building code, violating other standards regulating steps, was otherwise dangerous" and caused Samanta to fall and suffer permanent physical injuries, mental anguish, and emotional trauma. Appellants alleged that appellee either caused or knew the steps were in a dangerous condition and failed to correct or warn of the existence of the dangerous condition. Appellants further alleged that Brent suffered the loss of Samantha's consortium and society because of appellee's negligence and/or recklessness. Appellee generally denied the allegations and raised numerous affirmative defenses.

Lucas County, Ohio. "John Does Nos. 1-10" do not reappear in the record except for the pleading captions showing the defendants as "Naomi Stoykoff, et al."

2.

{¶ 4} Following a period of discovery by the parties, which included the July 10, 2024 deposition of Samantha Davis, appellee filed a motion for summary judgment, which appellants opposed. Appellee argued that Samantha's ongoing speculation during the course of her deposition on the cause of her fall – whether the concrete steps, the storm door to the side door, or the railing/handrail – defeated her negligence claim and was appropriate for summary judgment.[2] Upon Samantha's negligence claim failing, appellee further argued that Brent's loss of consortium claim also failed.

{¶ 5} Appellants opposed the motion and argued "the loose handrail was the ultimate cause of Plaintiff's fall." They argued that because proximate cause is a question of fact for a jury, summary judgment was defeated where the proximate cause of Samantha's injuries – the allegedly loose handrail according to her testimony -- is a genuine issue of material fact for a jury to determine for her negligence claim.

{¶ 6} On November 14, 2024, the trial court granted appellee's motion and stated there is no just cause for delay.[3] The trial court reasoned that appellants must actually

---

[2] Appellee also retained an architect who produced an expert report that concluded the storm door and steps operated as intended and complied with applicable state and local building codes. Appellee's expert also distinguished the functions of a railing's handrail from its balusters. A handrail is a horizonal or sloping rail intended for grasping by hand for guidance or support while a baluster is a vertical post under the handrail to support the handrail itself, not for grasping by hand for guidance or support, which is what Samantha Davis testified she did.

[3] The trial court only granted summary judgment to appellee Naomi Stoykoff with the Civ.R. 54(B) certification. We find the trial court's judgment may be considered final and appealable under Civ.R. 15(D) and Civ.R. 3(A) where the one-year period for naming and serving "John Does 1-10" has expired and there is no evidence in the record that the action ever commenced against those defendants. *Nored v. Dayton City School Dist. Bd. of Education*, 2019-Ohio-1476, ¶ 4-5 (2d Dist.); *see Whitman v. Chas. F. Mann Painting Co.*, 2005-Ohio-245, ¶ 7 (6th Dist.).

3.

know, without speculation, what caused Samantha to fall, citing *Rosenbrook v. Lucas Cty. Bd. of Commrs.*, 2015-Ohio-1793, ¶ 47 (6th Dist.). The trial court found that speculation or conjecture as to what proximately caused Samatha to fall was insufficient to establish premises-owner liability as a matter of law, citing *Koop v. Speedway SuperAmerica, LLC*, 2009-Ohio-1734, ¶ 34 (12th Dist.). Based on the Civ.R. 56(C) evidence in the record, the trial court concluded it "is only left to speculate about how the fall occurred." The complaint alleged defective steps caused Samantha's fall, then during her deposition, she rejected that theory and testified that a defective storm door caused her fall and, later, testified that a defective handrail caused her fall. The trial court found that, "The only evidence before the Court regarding the cause of Ms. Davis's fall is mere speculation" because it changed during the course of the deposition to be entirely different from the complaint. The trial court then found that Brent Davis' loss of consortium claim failed because his spouse's tort claim failed.

{¶ 7} Appellants timely filed this appeal setting forth one assignment of error: "The trial court erred by failing to consider testimony from plaintiff-appellant Samanta Davis that a secure handrail would have prevented her fall regardless of the initiating reason of the start of her fall."

## II. Standards of Review

### A. Summary Judgment

{¶ 8} Summary judgment isolates and disposes of factually unsupported claims or defenses. *Dresher v. Burt*, 75 Ohio St.3d 280, 288 (1996). "The main purpose of the summary judgment statute is to enable a party to go behind allegations in the pleadings and

4.

assess the proof in order to see whether there is a genuine need for trial." *Cunningham v. J. A. Myers Co.*, 176 Ohio St. 410, 413, (1964) (evaluating former R.C. 2311.041(D), now Civ.R. 56).

{¶ 9} We review the trial court's decision on summary judgment under a de novo standard of review. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30. In employing the same Civ.R. 56 standard as trial courts, we will uphold summary judgment when there is no genuine issue of material fact; the moving party is entitled to judgment as a matter of law; and when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only come to one conclusion, and that is adverse to the nonmoving party. *Id.* at ¶ 31.

{¶ 10} The moving party, in this case appellee, "bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher* at 293.

{¶ 11} "[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.* Appellants are the nonmoving parties in opposition to summary judgment. "The party opposing the motion must show that any issue of material fact is genuine and not based merely on unsupported allegations or the pleadings." *Smathers* at ¶ 31. Thus, we may make reasonable inferences from supported facts, but we may not make inferences solely from

5.

another inference, leading to speculation and too much uncertainty as to what the facts are. *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 332-333 (1955).

{¶ 12} For summary judgment purposes we do not weigh the evidence because "determining whether issues of disputed fact exist is different from making findings of facts." *Smathers* at ¶ 32. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 2017-Ohio-4467, ¶ 14 (6th Dist.). Under Civ.R. 56(C), "any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Smathers* at ¶ 32.

## B. Negligence

{¶ 13} To prove negligence, appellants had the burden to establish each of these elements: (1) a duty of care by appellee to Samantha Davis, (2) breach of that duty, and (3) injury caused directly and proximately resulting from the breach. *Levy v. Huener*, 2018-Ohio-127, ¶ 15 (6th Dist.).

{¶ 14} The parties do not dispute the first element of negligence: that on April 15, 2021, Samantha Davis was invited into appellee's residence to clean it for pay. Whether or not a duty exists is a question of law for the court to determine. *Id.* at ¶ 16. "Under the common law, a landowner has a duty to invitees to exercise ordinary care and maintain the premises in a safe condition." *Id.* The duty of ordinary care "requires that the owner warn the invitee of any hidden or latent dangers the owner knows of or reasonably should know of and take reasonable precautions to protect the invitee from foreseeable dangers." *Id.* To defeat a negligence claim and obviate the duty of ordinary care, a landowner may assert

6.

the open-and-obvious doctrine, where the alleged danger "is so readily apparent that the invitee can reasonably be expected to discover it." *Id.* at ¶ 17.

> Even when an invitee does not actually see the object or danger until after he or she falls, no duty exists when the invitee could have seen the object or danger if he or she had looked. The issue of whether a risk was open and obvious may be decided by the court as a matter of law when only one conclusion can be drawn from the established facts. But, where reasonable minds could reach different conclusions as to the obviousness of the risk, the issue should be resolved by a jury. (Citations omitted.)

*Semprich v. Cty. of Erie*, 2013-Ohio-3561, ¶ 12 (6th Dist.).

{¶ 15} With respect to the second element of negligence, appellants allege that appellee breached the foregoing duty to Samantha Davis because appellee knew or should have known the railing was loose by her own use of the side door. Appellee's brief does not clearly respond, although her answer to the complaint raised affirmative defenses, such as appellants' "duty to look."

### III. Analysis

{¶ 16} This appeal is about the third element of appellants' negligence claim: whether Samantha Davis' injury was proximately caused by appellee's breach of duty to an invitee.

{¶ 17} Appellants' sole assignment of error does not argue that appellee failed to meet her initial evidentiary burden under Civ.R. 56(C) in their summary judgment motion. In summary, appellee pointed to the complaint and to the deposition of Samantha Davis to show that there was no genuine issue as to any material fact on proximate cause because Samantha Davis speculated as to what caused her fall, and speculation was not

7.

acceptable evidence under Civ.R. 56(C) and Ohio law. We find appellee met her initial burden as the movant for summary judgment.

{¶ 18} The burden shifted to appellants under Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue of material fact for trial. Citing *Scott v. Kirby*, 2006-Ohio-1991, ¶ 33 (6th Dist.), appellants argue proximate cause is a question of fact for the jury unless reasonable minds could not differ. At the summary judgment stage, appellants were not required to prove that appellee's defective handrail was a breach of appellee's duty to Samantha Davis and was the proximate cause of Samantha's injuries. *Id.* Rather, appellants were only required to offer sufficient relevant facts to create a genuine issue of material fact on the proximate-cause question. *Id.* We agree.

{¶ 19} The allegedly defective railing was present during each of Samantha's prior five visits to appellee's residence. Samantha testified, "I never had any contact with that railing before this incident," and did not know the top part was "wobbly" and would move when attempting to hold onto it. She later clarified that as she fell she sought to grasp the first baluster at the top step. Samantha believed appellee knew the railing was loose because appellee used a cane to walk up and down the stairs and must have had to hold onto the railing at some point.

{¶ 20} The photo of the side door, concrete steps and railing outside of appellee's residence is marked as Exhibit A to Samantha Davis' deposition filed in the record. When asked if the railing depicted in the photo looked any different than at the time of the incident, Samantha answered, "No." Samantha testified that the photo accurately depicted the side door of the brick home with two concrete steps leading to a closed

8.

storm door with the handle on the left, meaning that it would swing out to the right when opened. When facing the storm door, on the left side of the two concrete steps is a thin metal railing that runs the short length of the two concrete steps. The metal railing has a horizontal handrail that slopes down with the concrete steps, and the handrail is supported by two vertical posts or balusters. The handrail is affixed to the brick wall with a bolted plate and each of the two balusters is affixed to one of the two concrete steps or treads with bolted footers. Nothing in the photo appeared loose or unmoored. Nevertheless, Samantha testified that as she fell she reached for the first baluster and "the whole thing was wobbly . . . . When I grabbed onto it and fell, it moved a foot away from me."

{¶ 21} Appellants point to Samantha's deposition testimony that regardless of the initiating reason for the start of her fall, whether the steps or the storm door, when she reached out to grab the baluster, which she calls the "handrail," to stop her fall, a secure handrail would have prevented her fall. Appellants assert that had the handrail been secure, she would not have fallen down the two concrete steps and would not have been injured with permanent right-knee damage and migraines.

> Q: And why couldn't you hold on to the handrail?
> A: Because the handrail moved a foot away from me when I grabbed onto it and put some of my weight down onto it.
> . . .
> Q: And so if the handrail had been sturdy, you would have been able to hold onto the handrail and not fall; is that correct?
> A: That is correct, yes.
> Q: So, what actually caused your fall, or at least what would have prevented your fall in this case, was the loose handrail, correct?
> A: That is correct.

{¶ 22} In our de novo review of the record we find that, when viewed in the light most favorable to the nonmoving party, Samantha Davis' testimony creates a genuine issue of material fact on the questions of: (1) whether the allegedly defective condition of the storm door was the proximate cause of her injuries; (2) whether the allegedly defective condition of the baluster/handrail/railing was the proximate cause of her injuries, and/or (3) whether a combination of those alleged defects was the proximate cause of her injuries. *See Scott*, 2006-Ohio-1991, at ¶ 33 (6th Dist.) (analyzing proximate-cause testimony about the condition of an exterior porch and steps and how the lack of a handrail resulted in injury); *see also Tillman v. Montpelier Church of Christ*, 2012-Ohio-6252, ¶ 18-19 (6th Dist.) (analyzing the proximate-cause testimony of how the lack of a handrail to an interior stairway resulted in injury). Put another way, if Samantha Davis had failed to testify that grabbing onto a sturdy handrail would have stopped her fall to the ground and prevented injury, the summary judgment evidence would be insufficient to raise an issue of fact regarding proximate cause. *See Levy*, 2018-Ohio-127, at ¶ 24 (6th Dist.), citing *Tillman* at ¶ 20-25 (comparing the proximate-cause testimony about the condition of the surface of a creek bridge to the speculative proximate-cause testimony on whether a handrail would have prevented or lessened an injury).

{¶ 23} Appellants' sole assignment of error is well-taken.

## IV. Conclusion

{¶ 24} On consideration whereof, this court finds that there after construing all the evidence most strongly in favor of appellants, there are genuine issues of material fact

and appellee is not entitled to summary judgment as a matter of law. The judgment of the Lucas County Court of Common Pleas is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

Christine E. Mayle, J.

Myron C. Duhart, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.